UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA              :
                                      :    **ORDER**
v.                                    :
                                      :    13 CR 507-02 (VB)
BEHZAD POURGHANNAD,                   :
                    Defendant.        :
--------------------------------------------------------x

      For substantially the reasons in the government's opposition to defendant's motion for a reduction of his term of imprisonment to "time served," the motion is DENIED.

      The COVID-19 pandemic is an unprecedented worldwide catastrophe. But it does not warrant the early release of sentenced inmates in federal prisons convicted of serious, dangerous offenses, like Behzad Pourghannad, who have not exhausted their administrative remedies, and whose medical conditions or risk of contracting the virus cannot, by any reasonable definition, be deemed "extraordinary and compelling." See 18 U.S.C. § 3582(c)(1)(A)(i).

      First, Pourghannad's offense was exceptionally serious. Over a five-year period, operating out of the Republic of Iran, he played a central role in a sophisticated scheme to smuggle carbon fiber out of the United States into Iran for use in that country's concerted effort to develop weapons of mass destruction, thereby endangering not only the citizens of the United States, but also the citizens of every other country in the world. At the time of sentencing, the Court expressed surprise at the relative leniency of the Sentencing Guidelines, but decided nevertheless to impose a sentence within the applicable Guidelines range of 46 to 57 months' imprisonment. The Court then adjusted the sentence downward to account for the 26 months defendant spent in custody while fighting extradition, for which he would not receive credit against his sentence from the Bureau of Prisons ("BOP"). As a result, the sentence actually imposed was 20 months. The Court identified only one mitigating factor, namely, that defendant

1

had spent more than two years in jail in what were for him the foreign countries of Germany and the United States, which had to have been difficult for him. That factor warranted a sentence at the bottom of the range, rather than in the middle or the top of the range.

The Court imposed this sentence after defendant had been lawfully arrested, prosecuted, and convicted, and after careful consideration of all the 18 U.S.C. § 3553(a) factors. It was a just sentence then; it is a just sentence now. To shorten it in light of the current public health crisis would not promote respect for the law; it would promote disrespect for the law. And it would undermine a critical sentencing objective in this case, the need for the sentence imposed to afford adequate deterrence to criminal conduct.

Second, this Court's authority under Section 3582(c)(1)(A) to reduce a term of imprisonment after it has been imposed is strictly limited to situations in which the Director of the BOP has moved for such relief or when a defendant makes such a motion "after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." The Director of the BOP has not made such a motion. On March 30, 2020, defense counsel emailed a letter to the warden at Metropolitan Detention Center-Brooklyn ("MDC"), where defendant is currently housed, requesting that the BOP make such a motion. Two days later, on April 1, 2020, without waiting for the warden's response, defendant filed the instant motion. Self-evidently, the motion was filed prematurely, and can be denied for that reason alone.

However, defendant contends the Court has the power to excuse the statute's exhaustion requirement. But "fully exhausted" means fully exhausted. And "30 days" means 30 days. The statute's language is crystal clear and contains no exceptions, based on futility or anything else.

The Court is not aware of any binding authority that the unusual circumstances of the current public health crisis warrant excusing the exhaustion requirement, at least when the government asserts the failure to exhaust as a defense to the motion. But the Court need only read the statute to determine whether it has that power. It does not.

Moreover, even if this Court had the authority to waive the exhaustion requirement, it would not do so. The BOP has been given the authority to make, or at least consider making, such motions for good reason. The BOP is well-suited to make an informed decision about whether there are "extraordinary and compelling reasons" in a particular defendant's case to warrant the extraordinary relief being sought—namely, early termination of a lawfully imposed prison sentence—taking into account critical data such as the defendant's medical history and institutional record. Particularly when many sentenced defendants are seeking compassionate release for essentially the same reason—fear of exposure to COVID-19 and the consequences thereof—the BOP should be given an opportunity to address these claims on a consistent basis. Fairness to all inmates, not just this inmate, is at stake. Congress, of course, gave the power to review such decisions to the federal courts, but that does not make the BOP's initial determination any less important. And it goes without saying that, in many cases, adversarial judicial review might not even be necessary; if the BOP decides to make a compassionate release motion, it is unlikely a court would deny it.

Accordingly, the Court need not reach the merits of defendant's motion; i.e., whether there are extraordinary and compelling reasons to release him from BOP custody now. But even on the merits, there is nothing in the record before the Court to warrant that conclusion. Defendant is a 66 year-old man. He is not elderly. He is not sick. He suffers from fairly common health conditions for a man of his age—non-insulin dependent diabetes and moderately

elevated blood pressure. According to his medical file—which the government, not defendant, submitted to the Court—MDC is closely monitoring his medical status and providing appropriate treatment, including medications for his diabetes and hypertension.[1] Of course he is at risk for contracting the virus at MDC. But he would also be at risk for contracting the virus if he were in the custody of U.S. Immigration and Customs Enforcement ("ICE"), which has filed a detainer with the BOP and will take defendant into custody at the end of his prison sentence, or if he were deported to Iran. Moreover, the Court is persuaded by the government's comprehensive submission that MDC has effectively responded to the COVID-19 threat at its facility, thereby successfully mitigating its spread, and there is no reason to believe defendant would be better off or receive better care from ICE or in Iran, whether he does or does not contract the disease.

Finally, as explained above, defendant is in federal prison for a very good reason, pursuant to an eminently fair sentence. To terminate that sentence prematurely would neither be just nor promote respect for the law. And it would undermine a principal purpose of the sentence, affording adequate deterrence to criminal conduct. See 18 U.S.C. § 3553(a).

Defendant's motion for a reduction of his term of imprisonment to "time served" is DENIED.

---

[1] Defendant claims he receives insulin injections for his diabetes. This contention is belied by his medical records which do not mention insulin in any form. Rather, according to those records, defendant receives metformin, an oral hypoglycemic medicine used to treat diabetes. In any event, defendant is clearly receiving treatment for his diabetes at MDC, which is what matters.

The Clerk is instructed to terminate the motion. (Doc. #27).

Dated: April 13, 2020
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge